21-1531
*Steele v. US*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of April, two thousand twenty-three.

PRESENT:

> GUIDO CALABRESI,
> RICHARD C. WESLEY,
> BETH ROBINSON,
> > *Circuit Judges.*

─────────────────────────────────────

JOSEPH STEELE,

> *Petitioner-Appellant,*

> v.                                                        No. 21-1531

UNITED STATES OF AMERICA,

> *Respondent-Appellee.*

─────────────────────────────────────

FOR APPELLANT:                          LAWRENCE D. GERZOG, Law Offices of
                                        Lawrence Gerzog, New York, NY.

FOR APPELLEE:                                    JILAN KAMAL, Assistant United States
                                                 Attorney (Hagan Scotten, Assistant
                                                 United States Attorney, *on the brief*), *for*
                                                 Damian Williams, United States
                                                 Attorney for the Southern District of
                                                 New York, New York, NY.

Appeal from an order of the United States District Court for the Southern District of New York (Marrero, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order entered on June 11, 2021, is **AFFIRMED**.

Petitioner-Appellant Joseph Steele appeals from the district court's denial of his petition for relief pursuant to 28 U.S.C. § 2255, in which he argued that he received ineffective assistance of counsel when his trial counsel (1) failed to call a forensic expert who would have testified about her gunshot residue testing that found no residue on the jacket Steele was wearing when he allegedly fired the gun; (2) failed to introduce into evidence the glove allegedly recovered from his possessions when he was arrested, along with the forensic report finding that his DNA was not identified on the glove, and failed to call the police officer who claimed to have found the glove in Steele's possession, in order to show irregularities in the police investigation. We assume the parties' familiarity with

the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

To establish ineffective assistance of counsel, Steele must show that his attorney's performance, considering the totality of the evidence before the jury, was both objectively unreasonable and prejudicial to his defense. *See Strickland v. Washington*, 466 U.S. 668, 669, 687–88, 692 (1984). To satisfy the first prong, Steele must demonstrate that counsel's performance fell below an objective standard of reasonableness in light of "prevailing professional norms."[1] *Id.* at 688. To satisfy the second prong, Steele must demonstrate a "reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When determining whether counsel was ineffective, a court need not address both prongs if the movant fails to make a showing on either one. *See id.* at 697. Both the performance and prejudice prongs of the ineffectiveness inquiry are mixed questions of law and fact, and we review a district court's conclusions as to each without deference to the district court. *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011).

---

[1] In quotations from caselaw and the parties' briefing, this order omits all internal quotation marks, alterations, footnotes, and citations, unless otherwise noted.

3

1.  <u>Gunshot Residue Testimony</u>

Shortly before trial, Steele moved to admit a gunshot residue report by a Forensic Criminalist from the New York Police Department Laboratory that detected no gunshot residue on the burgundy jacket worn by Steele when he allegedly fired the gun. On the basis of various deficiencies in the report's analysis, the government opposed the motion, arguing that the report would be misleading without the necessary explanation and context from the criminalist. Specifically, the government had learned that the criminalist used a low-power microscope that can adequately identify residue only on victims' clothing or surfaces actually struck by a bullet. The NYPD laboratory does not use the higher-powered industry-standard microscope on clothing due to resource-allocation issues. The government also learned from the criminalist that gunshot residue is not commonly found on the shooter unless the shooter's clothes were burned or singed by the gunfire; certain materials are more efficient than others at retaining residue; environmental conditions and the act of running can easily brush gunshot residue from clothing; and the passage of time can reduce the likelihood that gunshot residue will persist on a surface.

The district court ruled that the report was not admissible without the testimony of the criminalist—a ruling we affirmed on appeal. *See United States v. Steele*, 729 F. App'x 47, 49-50 (2d Cir. 2018).

At trial, Steele's counsel initially planned to call the criminalist to testify in order to introduce the report. However, as he explained to the district court later in the trial, he made a strategic decision not to call the criminalist because he concluded that the testimony of other witnesses about how gunshot residue may land on a shooter was sufficient to enable him to make an argument about gunshot residue. As it turned out, the district court sustained the government's objection to Steele's counsel's attempt to make an argument about gunshot residue in closing.

In seeking relief under § 2255, Steele argues that counsel was ineffective for failing to call the criminalist as a witness and ensure admission of her conclusion that there was no gunshot residue detected on Steele's jacket. He contends that the jury's question to the court in the midst of deliberations highlights the prejudice to his case arising from his counsel's misjudgment. In particular, the jury asked, "was the jacket [Steele was wearing] checked for gun powder residue?" App'x 144. The court ultimately informed the jury that no

5

evidence in testimony or any exhibits indicates whether the jacket was checked for gunshot residue.

We conclude that even if Steele could show that counsel's performance was objectively unreasonable in light of prevailing norms, he has not shown a reasonable probability of prejudice. The evidence against him was strong, and the probative value of the gunshot residue evidence—qualified by evidence of all the deficiencies and limitations in that analysis—would have been minimal.

The government's evidence against Steele was robust. In particular, the government introduced the following evidence:

- An eyewitness saw a man wearing a burgundy jacket point a gun and heard the sound of a gunshot.

- While chasing Steele, a responding officer observed Steele holding a black object in his left hand, and heard a metallic clattering sound after he witnessed Steele make a swinging motion across his body with his left hand.

- That same officer found a firearm near where he heard the clattering sound, approximately twenty feet from where Steele was arrested.

- Ballistics experts determined that a shell casing found near the location where the eyewitness said a man pointed and fired a gun was fired from the firearm the officer found.

- Multiple witnesses observed that Steele was wearing a burgundy jacket when arrested.

- And a surveillance video corroborated this account of events.

In contrast, the probative value of evidence that Steele's jacket did not bear gunshot residue, qualified by the likely accompanying evidence concerning the deficiencies in the analysis and the limitations of the conclusion, would have been marginal. On this record, we conclude that there is no reasonable probability that any deficiency in counsel's representation for failing to call the criminalist affected the outcome of Steele's case. *See Strickland*, 466 U.S. at 700.

2. Evidence Relating to the Glove

Steele also argues that trial counsel was deficient because he refused to open a line of defense designed to show that the glove Steele allegedly had in his possession at the time of his arrest was planted. In particular, he contends that trial counsel was ineffective in failing to introduce the glove and the DNA reports finding that his DNA was not identified on the glove, and then failing to call the police officer who claimed to have found the glove in Steele's possession to raise the inference through cross-examination that the glove had been planted.

Steele's argument overlooks the critical fact that the jury never learned of the glove's existence because the parties both agreed not to introduce the glove into evidence. As a result of this agreement, Steele lost the ability to pursue his planted-glove theory, but gained the ability to emphasize to the jury that forensic experts had not found any of Steele's DNA or fingerprints on the gun—an

7

argument that would have lost considerable force if the jury concluded that Steele was wearing a glove when he fired and ran with the gun.

Given this trade-off, even if counsel's strategic decision to forego the planted-glove theory fell below professional norms, Steele could not show a reasonable probability that the trade-off prejudiced him. As noted above, the evidence against Steele was strong. And had the jury learned about the glove, it is reasonably likely that that information would have *hurt* Steele's case more than any benefit he could derive from suggesting to the jury that an officer had planted a glove on him after his arrest. That's especially true because, although the DNA testing ruled out Steele as a contributor of the major component of DNA on the glove, it was inconclusive as to the minor component of DNA on the glove and thus did not rule Steele out.

\* \* \*

For the above reasons, the district court's order is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
